IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHELIA PHILLIPS NLEMADIM, § § Plaintiff, § § v. § § HARTFORD LIFE AND ACCIDENT § INSURANCE COMPANY, *et al.*, § § Defendants. § | Civil Action No. 3:06-CV-0057-N |

## ORDER

This Order addresses Plaintiff Shelia Nlemadim's and Defendant Hartford Life and Accident Insurance Co.'s ("Hartford") motions for summary judgment [61 & 63]. Nlemadim's and Hartford's motions turn on whether Hartford abused its discretion in interpreting its insurance policy's drug exclusion. Because Hartford used a legally correct construction of the plan, the Court grants Hartford's motion and denies Nlemadim's.

### I. BACKGROUND

Plaintiff Shelia Nlemadim is an employee of Baylor Health Care Systems ("Baylor") and an insured under Group Accidental Death and Dismemberment Policy No. 46-ADD-S0304 (the "Policy") issued by Hartford to Baylor for its employees. Hartford served as both the insurer and the plan administrator. Baylor provided Nlemadim with basic accidental death and dismemberment ("AD&D") coverage, and Nlemadim elected to pay for additional Voluntary AD&D coverage for herself, her husband, and her daughter.

On October 1, 2004, Nlemadim's husband, Terry L. Bagley, died in a motor vehicle accident. Bagley was driving westbound on a two-lane highway when his vehicle crossed the center median and east bound lane, left the roadway, and collided with a metal sign post. The police report indicates that Bagley was not wearing a seatbelt and was thrown from the vehicle as it rolled down a steep embankment after colliding with the sign post. Bagley was pronounced dead at the scene of the accident.

Nlemadim filed a claim for accidental death benefits on November 22, 2004, and Hartford began investigating the circumstances of the accident. On January 5, 2005, Hartford wrote Nlemadim, stating that it needed the autopsy report and toxicology report from the medical examiner, and provided Nlemadim an authorization form to release those records, which Nlemadim signed. The autopsy report indicated that Bagley died of multiple blunt force injuries sustained in the accident. The toxicology report listed various levels of drugs in Mr. Bagley's blood and urine. The blood report indicated positive tests for diphenhydramine (better known by its trade name Benadryl) in the low therapeutic range; ecgonine methyl ester and benzoylecgonine (both metabolites of cocaine) and cocaine in the therapeutic range; and morphine (a narcotic) below the therapeutic range. Bagley's urine tested positive for 6-monoacetyl morphine (a marker indicative of heroin use) as well as morphine and codeine (both metabolites of heroin).

After receiving the toxicology report, Hartford contacted Nlemadim and requested Bagley's prescription drug history or the names and address of his drug stores, and the names and addresses of his attending physicians. Nlemadim informed Hartford that she "wasn't

involved in [her] husbands [*sic*] health history." App. in Supp. of Def.'s Mot. for Summ. J. ("App.") at 258. She stated that, because "both . . . were private about things like that," *id.*, she did not know what medication, if any, he was taking.

On May 2, 2005, Hartford again requested the names and addresses of Bagley's attending physicians as well as his prescription drug history. Nlemadim responded, through counsel, with a demand for payment of policy proceeds. On May 13, Nlemadim's counsel sent a supplemental letter, asserting that the toxicology report was immaterial to her claim for benefits.

Hartford responded to Nlemadim's counsel on May 20, 2005, citing exclusion number 6 in the Policy ("Exclusion 6"), which states:

> This policy does not cover any loss resulting from:
> . . .
> 6.   Injury sustained while voluntarily taking drugs which federal law prohibits dispensing without a prescription, including sedatives, narcotics, barbiturates, amphetamines, or hallucinogens, unless the drug is taken as prescribed or administered by a licensed physician;

App. at 21. Hartford explained that it needed Bagley's medical records and prescription history to determine whether the drugs found in Bagley's system were prescribed, and, if so, whether they existed within therapeutic ranges. Hartford further explained that Nlemadim's claim could not be settled without this information. On May 31, 2005, Nlemadim's attorney reiterated that the requested documentation could not be provided, and on June 15, 2005, Hartford notified Nlemadim of its decision to deny her claim.

Nlemadim appealed Hartford's decision on August 11, 2005. As part of the appeal, Kathleen M. Bell, RN, BSN, CCM, CDMS, LNC-CSp, performed a toxicology review to

determine whether Bagley had taken any drugs without a prescription. Bell concluded, "[t]here is no documentation to support that Mr. Bagley had received any cocaine substances or morphine from a physician, or had prescriptions from a physician for cocaine or morphine. Toxicology findings support illegal drug usage (cocaine & metabolites of heroin)." App. at 95-97. On October 10, 2005, Hartford denied Nlemadim's appeal, citing the Policy's exclusion for voluntary use of drugs without a prescription, and advised her that she had exhausted all administrative remedies. On December 12, 2005, Nlemadim filed this suit in the Dallas County Court at Law No. 5. Hartford timely removed to this Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). In making this determination, a court must accept the nonmovant's evidence as true and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. HARTFORD DID NOT ABUSE ITS DISCRETION IN DENYING NLEMADIM'S CLAIM FOR BENEFITS

At its core, this case concerns the interpretation of Exclusion 6. Nlemadim argues that the only reasonable one is hers: that coverage is precluded *only* when the insured sustains

ORDER – PAGE 4

injury while in the act of taking (i.e., swallowing, inhaling, ingesting, injecting) illegal drugs or drugs not prescribed by a physician. Nlemadim contends that Hartford abused its discretion in interpreting the Policy and therefore improperly denied her claim for death and dismemberment benefits because that denial was based on the mere presence of drugs in Bagley's system, which were neither prescribed nor administered by a licensed physician.[1] Nlemadim also argues that Hartford further abused its discretion in making factual determinations about Bagley's drug use by failing to properly investigate when the drugs found in Bagley's blood and urine were taken, i.e., whether Bagley was engaged in the act of ingesting or swallowing at the moment of the accident, and whether those drugs might have been prescribed by a licensed physician. Because Hartford's interpretation of Exclusion 6 comports with a fair reading of the Policy and because Hartford had no duty to conduct further investigations into the circumstances of Bagley's accident, the Court finds that Hartford did not abuse its discretion in denying Nlemadim's claim.

### A. The Court Reviews Hartford's Policy Interpretation and Factual Determinations for Abuse of Discretion

Generally, a court reviews an administrator's denial of insurance benefits de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). However, when, as here,[2]

---

[1] Nlemadim concedes that the evidence showed various legal and illegal drugs present in Bagley's system, but argues that the evidence failed to support the conclusion that Bagley was taking the drugs at the moment the accident occurred.

[2] The summary plan description, for example, states: "The Insurance Carrier – not Baylor – is responsible for the actual coverage and the AD&D benefits they provide or arrange. All appeals regarding benefits must be made directly to them. *The Insurance Carrier has final authority on matters relating to AD&D benefits.* Contact them directly for:

a plan gives its administrator "discretionary authority to determine the eligibility for benefits or to construe the terms of the plan," the Court reviews the administrator's denial of benefits for abuse of discretion. *Id.* at 115; *see also Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636-37 (5th Cir. 1992).

As applied to an administrator's interpretation of plan provisions, the abuse of discretion standard involves a two-step process. "First, a court must determine the legally correct interpretation of the plan." *Wildbur*, 974 F.2d at 637. When determining whether the administrator's interpretation of the plan was "legally correct," a court must consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Id.* at 638. Second, "[i]f the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion." *Id.* at 637. To determine whether the administrator abused its discretion, courts consider: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Id.*

A court also reviews an administrator's factual determinations under an abuse of discretion standard, "regardless of the administrator's ultimate authority to determine benefit

---

. . . Appeal of denied claims . . . Any other benefit or administrative issues . . . ." Pl.'s First Am. Original Compl. Ex. D at 7 ("Accident Death & Dismemberment Insurance Plan 2004 Summary Plan Description").

eligibility." *Chacko v. Sabre*, 473 F.3d 604, 610 (5th Cir. 2006). When applying this standard, a court determines whether the plan administrator acted arbitrarily or capriciously. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). An administrator acts arbitrarily or capriciously when its decision lacks "a rational connection between the known facts and the decision or between the found facts and the evidence." *Lain v. Unum Life Ins. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)). "Assuming that both parties were given an opportunity to present facts to the administrator, . . . review of factual determinations is confined to the record available to the administrator." *Meditrust*, 168 F.3d at 215.

If an administrator's decision might be tainted by a conflict of interest, however, courts "employ[] a 'sliding scale' to evaluat[e] whether there was an abuse of discretion." *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003) (citing *Vega*, 188 F.3d at 297). "The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claim that there is a conflict." *MacLachlan*, 350 F.3d at 479. When one party serves as both the plan's administrator and the insurer there is an "inherent conflict of interest." *Lain*, 279 F.3d at 343. When a conflict is minimal, however, courts apply "only a modicum less deference than [they] otherwise would." *Vega*, 188 F.3d at 301; *see also Lain*, 279 F.3d at 343 (applying only a "modicum less deference" where the defendant was both the insurer and plan administrator).

While, here, Hartford serves as both administrator and insurer, the Fifth Circuit has said that courts should "not read into *Vega* a presumption that a conflict exists *ipso facto* merely because the plan fiduciary both insures the plan and administers it." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 270 n.18 (5th Cir. 2004). Instead, "an ERISA plaintiff must come forward with evidence that a conflict exists." *Id.* Here, Nlemadim failed to do so. She has neither shown how this conflict affected Hartford's decision nor provided any other evidence of a conflict. Accordingly, the Court finds that Hartford is only minimally conflicted and affords Hartford only a "modicum less deference." *Chacko*, 473 F.3d at 610.

### *B. Hartford's Interpretation of Its Policy Is Legally Correct*

Nlemadim first contends that Hartford abused its discretion in interpreting the Policy and therefore improperly denied her claim for benefits. Because Hartford's interpretation comports with a plain reading of the Policy, the Court finds that Hartford's interpretation is legally correct and therefore not an abuse of discretion.

As discussed above, when reviewing an administrator's policy interpretation within the Fifth Circuit's two-step framework, the Court must first determine whether the interpretation is legally correct by looking to the three factors laid out in *Wildbur*, 974 F.2d at 637-38. If the administrator's policy interpretation is legally sound, "the inquiry ends because no abuse of discretion could have occurred." *Chacko*, 473 F.3d at 611. Here, neither party has put forth material evidence relevant to the first or third factors. Accordingly, the Court looks primarily to the second factor – whether either party's

interpretation is consistent with a fair reading of the Policy.

Exclusion 6 states, "[t]he policy does not cover any loss resulting from . . . [i]njury sustained while voluntarily taking drugs . . . unless the drug is taken as prescribed or administered by a licensed physician." App. at 21. Hartford interprets the provision to mean that "coverage is excluded if the prohibited drugs are present in any quantity in the insured's body at the time of the injury . . . regardless of whether the . . . drugs . . . caused or contributed to the injury or loss" such that "[t]he exclusion is avoided only when a licensed physician administered or prescribed the prohibited drugs." Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp. Br.") at 13. Nlemadim argues that Hartford's interpretation is unreasonable and, thus, legally incorrect. Nlemadim asserts that the exclusion's use of the words "while" and "taking" indicates a time frame in which the actions must occur to meet the exclusion, and, specifically, that the decedent must have been in the process of ingesting or swallowing the drugs "at the time/during the time/at the same time the injury was sustained." Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") at 32.

After reviewing the record and the parties' arguments, the Court concludes that Hartford's interpretation of Exclusion 6 is consistent with a fair reading of the Policy. "When interpreting plan provisions, . . . [courts] interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." *Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504, 507 (5th Cir. 2005). Here, the operative language of Exclusion 6 is the phrase "while voluntarily taking drugs" and, particularly, the

ORDER – PAGE 9

word "taking."³ "Taking," as used here, is the present participle of the verb "to take" and indicates that the action must be incomplete for the exclusion to apply. Nlemadim suggests that "take" means "to receive into the body or system, as by swallowing or inhaling," RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1937 (2d. ed. 2001) ("WEBSTERS"), such that the exclusion applies only if the insured is in the process of swallowing or otherwise administering the drug when the accident occurs. However, "take" has a number of meanings. For example, "to take" could also mean: "to be subjected to; undergo," "to absorb or become impregnated with," or "to use up; consume." *Id.* According to Hartford, under these latter definitions one is "taking" drugs insofar as his body is subjected to or in the process of absorbing drugs, or until his body has used up or consumed the drugs in it. Thus, Hartford asserts, to the extent a person has drugs in his system, he or she can reasonably be characterized as "taking drugs."

Hartford's interpretation is supported by the fact that Exclusion 6 provides an exception for medication taken "as prescribed or *administered* by a licensed physician." App. at 21 (emphasis added). The word "administered" is the past participle of the word "administer," which means "to make application of; give," and indicates that such action is in the past or complete. WEBSTER'S at 26. In other words, Exclusion 6 provides an exception for drugs the insured was "taking" at the time he was injured, provided the drugs

---

³The conjunction "while" simply makes clear that the accident must occur "during or in the time," or "throughout the time," that the insured is "voluntarily taking" drugs for the exclusion to apply, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 2165 (2d. ed. 2001))

were administered by a licensed physician. If the Policy intended "taking" to mean the act of receiving drugs into the body – i.e., swallowing or inhaling – as Nlemadim asserts, Exclusion 6 would not require an explicit exception for past or complete administration by a licensed physician because, by definition, such action would not fall within its terms. Therefore, the word "taking" must mean something other than the definition proposed by Nlemadim.

Having considered the record and the parties' arguments, the Court finds Hartford's interpretation to be consistent with the plain language of Exclusion 6. As a result, the Court concludes that Hartford's interpretation is legally correct and need not consider whether Hartford abused its discretion in selecting this interpretation. *See Chacko*, 473 F.3d at 611. Accordingly, the Court holds that Hartford properly interpreted its policy and grants Hartford's motion for summary judgment on this claim.

### *C. Hartford Substantially Complied with Section 1133*

Nlemadim next argues that Hartford failed to comply with ERISA's notice and review requirements because (1) the first denial letter failed to demonstrate that an exclusion was met, (2) because Hartford failed to provide a full and fair review on appeal, and (3) because Hartford's final denial letter failed to demonstrate that an exclusion had been met. ERISA requires that, when denying a participant's claim for benefits, plan administrators must provide "adequate notice . . . setting forth the specific reasons for such denial" and "afford a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Because Hartford's interpretation of the

Policy is legally correct, the Court finds that Hartford substantially complied with 29 U.S.C. section 1133. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392-93 (5th Cir. 2006) ("Challenges to ERISA procedures are evaluated under the substantial compliance standard. This means that technical noncompliance with ERISA procedures will be excused so long as the purposes of section 1133 have been fulfilled." (internal citations and quotations omitted)).

Like her claim for Policy benefits, Nlemadim's claim under section 1133 rests entirely upon her proposed definition of the Policy. Hartford could have failed to comply with section 1133 as Nlemadim alleges – that is, by failing to show that Bagely's accident occurred "at the time/during the time/at the same time the injury was sustained," Pl.'s Br. at 32 – only if the Court accepts Nlemadim's interpretation of the Policy. Therefore, because the Court agrees with Hartford's interpretation of the Policy, Nlemadim's argument under section 1133 fails. Accordingly, the Court grants Hartford's motion for summary judgment as to Nlemadim's section 1133 claim.

### D. Hartford's Factual Determinations Were Not an Abuse of Discretion Because Hartford Had No Duty to Investigate

Nlemadim also claims that Hartford's abused its discretion in making factual determinations with respect to her claim because the company failed to conduct an investigation to determine whether the drugs found in Bagley's system were administered at the time of the accident and whether they might have been prescribed or administered by

a licensed physician.[4]  Because plan administrators have no duty to investigate when the record supports their decision, the Court grants Hartford's motion for summary judgment as to this claim.

Under Fifth Circuit case law, a "district court may not impose a duty to reasonably investigate on the administrator." *Vega*, 188 F.3d at 299.  In *Vega*, the Fifth Circuit explained:

> Under our own precedent and the Supreme Court's ruling in *Bruch*, we must give deference to the administrator's decision.  That the administrator decides a claim when conflicted, however, is a relevant factor.  In a situation where the administrator is conflicted, we will give less deference to the administrator's decision.  In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision.  Although the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial.

*Id.*  Thus, given that the record supports Hartford's ultimate decision to deny benefits, Hartford had no duty to investigate in this case and cannot be held liable for failing to do so.

Even if Hartford had such a duty, the record demonstrates that Hartford took numerous steps to obtain the information necessary to determine whether the drugs found in Bagley's system were taken as prescribed by a licensed physician.  Indeed, Hartford gave Nlemadim ample opportunity to provide information pertaining to her husband's medical history and she refused.  Thus, to the extent that the results of Hartford's investigation may

---

[4]Nlemadim's contends that Hartford could have distributed the medical release authorization she signed to surrounding pharmacies to determine whether Bagley filled any prescriptions there.  This, according to Nlemadim, would have directed Hartford to any physician Bagley may have seen..

ORDER – PAGE 13

have been incomplete, the fault likely falls on Nlemadim's own lack of cooperation. Accordingly, the Court grants Hartford's motion for summary judgment as to Nlemadim's claim for failure to conduct an investigation.

### III. NLEMADIM CONCEDES HER REMAINING CLAIMS

The Court further grants Hartford's motion for summary judgment as to Nlemadim's state law claims and claims pursuant to 29 U.S.C. section 1132(a)(3). Nlemadim concedes that her state law claims are preempted by ERISA and that she is not entitled to assert a section 1132(a)(3) cause of action because she has an adequate remedy under section 1132(a)(1)(B). Pl.'s Resp. Br. to Def.'s Mot. for Summ. J. at 19.

### IV. HARTFORD IS NOT ENTITLED TO ATTORNEYS' FEES

Finally, the Court denies Hartford's request for attorneys' fees. Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1)  When deciding whether to make such an award, courts consider "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award; (3) whether an award would deter others acting under similar circumstances; (4) whether the requesting party sought to benefit all participants and beneficiaries of an ERISA plan, or to resolve a significant question regarding ERISA; and (5) the relative merits of the parties' positions." *See Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, ___ F.3d ___, No. 05-41851, 2007 WL 2317628, at *6 (5th Cir. Aug. 15, 2007) (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

Here, these factors weigh against an award of attorneys' fees. The Court finds that Nlemadim's claims were colorable and brought in good faith. As a result, the Court sees no need to deter similar conduct and concludes that the relative merits of the parties' positions were not so disparate as to call for an attorneys' fee award. The Court further notes that Hartford's defense in this case was likely not driven by an altruistic motive to benefit all plan beneficiaries and that Nlemadim, as a recently widowed mother, might find herself unable to satisfy such an award.

## V. CONCLUSION

For the reasons discussed above, the Court grants Hartford's motion for summary judgment as to each of Nlemadim's claims and denies Nlemadim's motion for summary judgment.

Signed September 26, 2007.

_____
David C. Godbey
United States District Judge